**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OMNI MEDSCI, INC., <br><br>     *Plaintiff*, <br><br> v. <br><br> SAMSUNG ELECTRONICS, CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC., FOSSIL GROUP, INC., FOSSIL STORES I, INC., FOSSIL PARTNERS, L.P., ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD., and ŌURA HEALTH OY, <br><br>     *Defendants*. | Civil Action No. 2:24-CV-1070 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Omni MedSci, Inc., by and through its undersigned counsel, files this Complaint against Defendants Samsung Electronics, Co. Ltd., Samsung Electronics America, Inc., Fossil Group, Inc., Fossil Stores I, Inc., Fossil Partners, L.P., OnePlus Technology (Shenzhen) Co., Ltd., and Ōura Health Oy (collectively, "Defendants") for infringement of United States Patent Nos. 9,055,868 ("the '868 Patent"), 9,651,533 ("the '533 Patent"), 10,517,484 ("the '484 Patent"), 10,874,304 ("the '304 Patent"), and 11,160,455 ("the '455 Patent") (collectively, "Asserted Patents") (copies of the Asserted Patents attached as Exhibits 1, 2, 3, 4, and 5, respectively), and alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.*, to obtain damages and injunctive relief resulting from Defendants' unauthorized actions of making, having made, using, selling, having

sold, offering to sell, importing, or having imported into the United States products that infringe or enable the infringement of one or more claims of the Asserted Patents.

## THE PARTIES

2.     Plaintiff Omni MedSci, Inc. ("Omni MedSci" or "Plaintiff") is a corporation organized and existing under the laws of the state of Michigan with a place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

3.     Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea. SEC has a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Korea 443-742.

4.     Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary corporation of SEC. SEA is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.

5.     SEA is registered to do business in the State of Texas and has been since at least June 10, 1996. SEA maintains offices and/or other facilities at least at 6625 Excellence Way, Plano, Texas 75023.

6.     SEA may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.     Upon information and belief, SEA employs full-term personnel such as sales personnel and engineers in this District.

8.     Upon information and belief, SEC conducts all or substantially all of its activities in the United States through its wholly owned and controlled subsidiary SEA. Alternatively, SEC and SEA form a joint business enterprise such that the performance by one is attributable to the other.

9.  SEC and SEA are referred to collectively as "Samsung."

10.  Samsung designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports cell phones, tablets, smartwatches, and smart rings configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, Samsung has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

11.  Samsung controls and operates a cloud computing platform, including Samsung Cloud, through which it provides cloud computing services involving receiving data signals over wireless transmission links from cell phones and tablets located in the Unites States, processing received data, and storing data within the United States.

12.  Defendant Fossil Group, Inc. ("Fossil Group") is a corporation organized and existing under the laws of Delaware.

13.  Fossil Group has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

14.  Defendant Fossil Stores I, Inc. ("Fossil Stores") is a corporation organized and existing under the laws of Delaware.

15.  Fossil Stores has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

16.  Fossil Stores is a wholly owned subsidiary of Fossil Group.

17.  Fossil Stores maintains a store in this District, at least at 820 W. Stacy Road, Allen, Texas 75013.

18.     Defendant Fossil Partners, L.P. ("Fossil Partners") is a limited partnership organized and existing under the laws of Texas.

19.     Fossil Partners has a principal place of business at 901 S. Central Expressway, Richardson, Texas 75080.

20.     Fossil Group is the sole general partner of Fossil Partners.

21.     Upon information and belief, Fossil Group conducts all or substantially of the "FOSSIL" brand's U.S. operations through Fossil Partners and Fossil Stores. Alternatively, Fossil Group, Fossil Partners, and Fossil Stores form a joint business enterprise such that the performance by each one is attributable to each other one.

22.     Fossil Group, Fossil Stores, and Fossil Partners are referred to collectively as "Fossil."

23.     Fossil can be served through their registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

24.     Fossil designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports smartwatches configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, Fossil has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

25.     Defendant OnePlus Technology (Shenzhen) Co., Ltd. ("OnePlus") is a limited company organized and existing under the laws of China.

26.     OnePlus has a principal place of business at 18F Tairan Building, Block C, Tairan 3 8th Road, Chegongmiao, Futian District, Shenzhen, Guangdong 518040, China.

27.    OnePlus designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports cell phones, tablets, and watches configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, OnePlus has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

28.    OnePlus controls and operates a cloud computing platform, including OnePlus Cloud, through which it provides cloud computing services involving receiving data signals over wireless transmission links from cell phones and tablets located in the United States, processing received data, and storing data in the United States.

29.    Defendant Ōura Health Oy ("Ōura") is a Finnish osakeyhtiö with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.

30.    Ōura designs, manufactures, makes, uses, markets, offers to sell, sells, and/or imports rings configured to measure physiological parameters, including products accused of infringement in this Complaint, into the United States, including this Judicial District. In addition, Ōura has authorized sellers and sales representatives in the United States and in this Judicial District that offer to sell and sell products pertinent to this Complaint.

**JURISDICTION AND VENUE**

31.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 30 above.

32.    Jurisdiction and venue for this action are proper in this Judicial District.

33.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

34.     This Court has personal jurisdiction over Samsung at least because, through SEC's and SEA's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

35.     For example, Samsung has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Samsung has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

36.     This Court has personal jurisdiction over Fossil at least because, through Fossil Group's, Fossil Partner's and Fossil Stores's own acts and/or through the acts of each other acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) have purposefully availed themselves

of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) have done and are doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintain continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

37.     For example, Fossil has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Fossil has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

38.     This Court has personal jurisdiction over OnePlus at least because, through OnePlus's own acts and/or through the acts of others acting as its agent, representative, or alter ego, OnePlus (i) has a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through

intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

39.     For example, OnePlus has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and OnePlus has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

40.     This Court has personal jurisdiction over Ōura at least because, through Ōura's own acts and/or through the acts of others acting as its agent, representative, or alter ego, Ōura (i) has a presence or regular and established place of business in the State of Texas and this Judicial District; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Texas and this Judicial District; (iii) has done and is doing substantial business in the State of Texas and this Judicial District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this Judicial District; (iv) maintains continuous and systematic contacts in the State of Texas and this Judicial District; and/or (v) places products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this Judicial District.

41.     For example, Ōura has authorized retailers and distributors in the State of Texas and this Judicial District for the products alleged to be infringing in this Complaint, and Ōura has derived substantial revenues from their infringing acts occurring within the State of Texas and this Judicial District.

42.    Defendants have each established sufficient minimum contacts with the State of Texas and this Judicial District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this Judicial District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this Judicial District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this Judicial District.

43.    Venue is proper in this Judicial District as to Defendants under 28 U.S.C. §§ 1391 or 1400(b).

44.    As foreign entities, venue is proper as to SEC, OnePlus, and Ōura under 28 U.S.C. § 1391(c)(3).  *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants").

45.    Venue is proper as to SEA and Fossil under 28 U.S.C. § 1400(b) because they have offered to sell or sold products accused of infringement to actual or potential customers located in this District and have a regular and established place of business in this District, as alleged above.

**JOINDER**

46.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 45 above.

47.    Joinder is proper under at least Rule 20 of the Federal Rules of Civil Procedure and 35 U.S.C. § 299 at least because Defendants' infringing conduct as alleged herein arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using,

importing into the U.S., offering for sale, and/or selling of constituents of the same accused systems, and questions of fact common to all Defendants will arise in this action.

48.     Samsung, Fossil, OnePlus, and Ōura each make, use, import, offer for sale, and/or sell wearable smart devices configured to measure physiological parameters and to transmit data signals over wireless transmission links to smartphones and tablets, including Samsung and OnePlus smartphones and tablets.

49.     Samsung and OnePlus also each make, use, import, offer for sale, and/or sell smartphones and tablets that receive data signals over wireless transmission links from Samsung, Fossil, OnePlus, and Ōura wearable smart devices.

50.     Samsung, Fossil, OnePlus and Ōura each also provide and support software applications that enable their respective wearable devices to be integrated with various smartphones and tablets, including Samsung and OnePlus smartphones and tablets, and to enable such integrated smartphones and tablets to receive and process data signals associated with measured physiological parameters over wireless transmission links from such wearable devices.

51.     Samsung also provides cloud storage and computing services, including Samsung Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

52.     OnePlus also provides cloud storage and computing services, including OnePlus Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

53.     Ōura also provides cloud storage and computing services, including Ōura Cloud, via a cloud computing platform which receives and processes data signals associated with measured physiological parameters over wireless transmission links from cell phones and tablets.

54.    Each Defendant is accused of infringing the Asserted Patents by, inter alia, making, using, offering for sale and/or selling measurement systems comprising their respective wearable devices integrated with and connected to smartphones and tablets, including Samsung and/or OnePlus smartphones and tablets, so as to enable such smartphones and tablets to receive and process data signals associated with measured physiological parameters over wireless transmission links from each Defendant's wearable devices and by inducing and contributing to the direct infringement of such systems by third parties. Because Samsung, Fossil, OnePlus, and Ōura wearable devices are configured to measure physiological parameters and to transmit associated data signals wirelessly to smartphones and tablets, including Samsung and OnePlus smartphones and tablets, there is significant overlap of the components of the accused systems provided and supported by each Defendant.

55.    Based on the above, factual questions relating to Samsung, Fossil, OnePlus, and Ōura's infringement will substantially overlap.

## BACKGROUND

### Dr. Mohammed Islam and Omni MedSci, Inc.

56.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 55 above.

57.    Dr. Islam received his B.S. degree in 1981, a M.S. degree in 1983, and a Sc.D. degree in 1985, all in electrical engineering, from the Massachusetts Institute of Technology in Cambridge.

58.    Early in his career, Dr. Islam was a member of the Technical Staff in the Advanced Photonics Department at AT&T Bell Laboratories in Holmdel, N.J.

59.    Dr. Islam joined the Electrical and Computer Engineering department at the University of Michigan in Ann Arbor in 1992, where he remains today as a Full Tenured Professor of Optics and Photonics.

60.    Dr. Islam is also a Professor of Biomedical Engineering, a joint department in both the College of Engineering and the Medical School, at the University of Michigan.  He was previously a faculty member with the University of Michigan Medical School's Department of Internal Medicine.

61.    From 1981 to 1985, Dr. Islam was a Fannie and John Hertz Fellow.  In 1992, Dr. Islam was awarded the OSA Adolf Lomb Medal for pioneering contributions to nonlinear optical phenomena and all-optical switching in optical fibers.  He also received the University of Michigan research excellence award in 1997.  In 1998, Dr. Islam became a Fellow of the Optical Society of America and received the Texas eComm Ten Award for being one of the 10 most influential people in Texas's digital economy in 2002.  Dr. Islam became a fellow of the IEEE in 2004 and was the first recipient of the prestigious 2007 Distinguished University Innovator Award.

62.    Dr. Islam has published over 135 papers in refereed journals, authored three books has written several book chapters, and has been an invited speaker at over 80 conferences and symposia on issues related to his research.  He is also the named inventor on over 200 U.S. patents, including the Asserted Patents.

63.    With an entrepreneurial spirit, Dr. Islam founded Omni MedSci in 2010 to help people by commercializing his optical technology innovations with healthcare and medicine applications.

64.    In 2015, Omni MedSci received the Eureka Award for being the #1 most Innovative Company in Michigan.

65.     By 2012, Dr. Islam had invented technology for using light sources and other components in wearable measurement devices that are capable of detecting and monitoring physiological parameters for use in various applications, including the medical and healthcare fields.

66.     On December 31, 2012, Omni MedSci filed a set of patent applications covering its developments using light sources for medical and other applications.

67.     The Asserted Patents result from extensive research and development by Dr. Mohammed Islam on behalf of Omni MedSci.

## The Asserted Patents

### U.S. Patent No. 9,055,868

68.     On June 16, 2015, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,055,868 ("the '868 Patent"), entitled "System and Method for Voice Control of Medical Devices."  The '868 Patent is attached as Exhibit 1.

69.     Plaintiff is the assignee of all rights, title, and interest in and to the '868 Patent and, at a minimum, of all substantial rights in the '868 Patent, and possesses all rights of recovery, whether legal or equitable, under the '868 Patent, including the right to recover damages for past infringement.

70.     The '868 Patent is valid and enforceable.

71.     The disclosed and claimed inventions of the '868 Patent provide improvements over prior art optical diagnostic systems by way of providing, inter alia, a control system remote from an optical measurement device associated with a user that can wirelessly receive and transmit measured physiological information associated with the user and that can receive both voice input and manually entered input. *See* '868 Patent at 1:39–63. The invention also includes a host capable

of receiving, storing, and processing wireless data transmitted by the control system. The host provides for generating and storing status information of the user and can also communicate the information to remote display devices. *See id.* at 1:63–2:33. Thus, the inventions of the '868 Patent provide greater flexibility and convenience in the operation and/or control of physiological measurement devices at remote locations as well as enhanced data processing, storage and display capabilities at a variety of locations.

72.    The asserted claims of the '868 Patent comprise at least the following physical components: a light source comprising one or more semiconductor diodes generating an input light beam and a lens system configured to communicate a portion of the input light beam onto a part of a user's body comprising blood for use in a measurement on the user; a software application associated with a control system for generating data representing physiological information based in part on the measurement; the control system having a touch-screen, voice and manual inputs capabilities, and circuitry for obtaining position information from a location sensor and a wireless transceiver; and a host comprising a digital file for storing wireless data, control logic to process the wireless data to generate a stats of the user, and an output for communicating a portion of the status or associated information of a communication link to one or more remotely located display output devices (*see* claim 7). Certain asserted claims further recite the light source being coupled to a multiplexer capable of combining the semiconductor diodes and generating the input light beam comprising one or more wavelengths (claim 8) and/or the input light beam being adapted for use in blood diagnostics comprising a spectroscopic procedure (claim 9). Thus, the asserted claims of the '868 Patent are each directed to a physical system and are not directed to an abstract idea.

73.    The inventions of the asserted claims of the '868 Patent provide the capability of non-invasive optical measurement of physiological parameters associated with a user and storage

and further processing of such physiological information by a wirelessly connected control system, as well as the further processing and storage capabilities of a host system enabled to also communicate the information for display on one or more remote display devices. The asserted dependent claims further recite light source details particularly suited to diagnostic measurements of interest. These elements provide for the unique and unconventional application of optical diagnostics, communications and control technology to provide more capable and useful non-invasive diagnostic systems for measuring physiological parameters of a user.

74.    Thus, the asserted claims of the '868 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '868 Patent.

**U.S. Patent No. 9,651,533**

75.    On May 16, 2017, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 9,651,533 ("the '533 Patent"), entitled "Short-Wave Infrared Super-Continuum Lasers for Detecting Counterfeit or Illicit Drugs and Pharmaceutical Process Control." The '533 Patent is attached as Exhibit 2.

76.    Plaintiff is the assignee of all rights, title, and interest in and to the '533 Patent and, at a minimum, of all substantial rights in the '533 Patent and possesses all rights of recovery, whether legal or equitable, under the '533 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

77.    The '533 Patent is valid and enforceable.

78.    The '533 Patent discusses an unmet need for non-invasive physiological measurement techniques such as glucose monitoring (e.g., monitoring glucose without drawing blood). *See* '533 Patent at 3:47–61. The '533 Patent explains that conventional non-invasive systems failed to provide adequate sensitivity, selectivity, and repeatability of measurement results. *See id*. at 3:61–63. It discloses techniques and wearable measurement devices that use brighter light sources outputting optical beams that include near-infrared wavelengths to increase the signal level from blood constituents. *See id*. at 5:35–47. Devices disclosed in the specification include a lens system for receiving an output beam and delivering an analysis output beam to a sample, and a receiver for detecting and processing a portion of the analysis output beam reflected from the sample. *See id*. at 5:47–54. The '533 Patent discloses other techniques, such as using pattern matching in spectral fingerprinting and software techniques, to more reliably identify different constituents in the blood. *Id*. at 4:18–28.

79.    The '533 Patent further discloses the capability to provide value-add services by wirelessly communicating the monitored data to a personal device such as a smartphone, and then wirelessly communicating the processed data to the cloud for storing, processing, and transmitting to several locations. In the disclosed system, the personal device is configured to receive and process at least a portion of the output signal, to store and display the processed output signal, and to transmit at least a portion of the processed output signal over a wireless transmission link. *See id*. at 5:54–6:3 and 26:27–56.

80.    The asserted claims of the '533 Patent comprise at least the following physical components: a light source comprising light emitting diodes for generating an output optical beam with one or more optical wavelengths including at least a portion being in the wavelength range of between 700 and 2500 nanometers, a plurality of lenses receiving a portion of the output optical

beam an delivering an analysis output beam to a sample, a receiver to receive and process a portion of the analysis output beam reflected from the sample to generate an output signal, a personal device configured to receive and process a portion of the output signal and to store and display the processed output signal, and a remote device configured to receive a wirelessly transmitted output status comprising a portion of the processed output signal and to process the received output status (*see* claims 11 and 12). The asserted claims also include one or more filters of the receiver in front of one or more detectors to select a fraction of the one or more wavelengths (claim 11) or the capability to generate the output signal in part by comparing signals at different optical wavelengths (claim 12). Thus, the asserted claims of the '533 Patent are each directed to a physical system and are not directed to an abstract idea.

81.     The asserted claims of the '533 Patent further recite the capability of increasing the signal-to-noise ratio by increasing light intensity from at least one of the semiconductor sources and by increasing the pulse rate of at least one of the semiconductor sources, as well as the capability to synchronize the receiver with the light source. These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters of a user.

82.     Thus, the asserted claims of the '533 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '533 Patent.

**U.S. Patent No. 10,517,484**

83.    On December 31, 2019, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,517,484 ("the '484 Patent"), entitled "Semiconductor Diodes-Based Physiological Measurement Device with Improved Signal-to-Noise Ratio." The '484 Patent is attached as Exhibit 3.

84.    Plaintiff is the assignee of all rights, title, and interest in and to the '484 Patent and, at a minimum, of all substantial rights in the '484 Patent, and possesses all rights of recovery, whether legal or equitable, under the '484 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

85.    The '484 Patent is valid and enforceable.

86.    The asserted claims of the '484 Patent are directed to an improved system for measuring one or more physiological parameters via light reflected from bodily tissue.

87.    The '484 Patent explains that at the time of its priority date, there was an unmet need for non-invasive measurement of bodily functions with sufficient sensitivity, selectivity, and repeatability due to the challenges with the non-invasive technology at the time in identifying and distinguishing between the various substances that compose and surround human tissue. *See* '484 Patent at 2:57–3:15. The disclosed and claimed inventions of the '484 Patent provide improvements over prior art measurement systems by way of, inter alia, synchronizing a detection system to a light source, increasing the intensity and pulse rate of the emitted light from a baseline level, and comparing a first signal generated responsive to the light detected when the light source is on to a second signal generated responsive to the light detected when the light source is off.

88.    For example, the '484 Patent teaches that by increasing the light intensity of the light source, the signal level measured by the detection system from particular blood constituents

over others is increased.  *Id.* at 3:16–23, 15:49–55.  It further discloses that increasing the pulse rate and synchronizing the detection system to the light source allows for measurement at a particular frequency while phase locked to a particular signal, enabling the detection system to reject background signals and increase the signal-to-noise ratio of the measured signal.  *Id.* at 15:66–16:8.  The '484 Patent further teaches that modulating the light source between on and off, while the detection system measures the light at each change, and comparing the measurements before and after a change allows the system to account for changes in ambient light (such as from changing exposure to sunlight or changing weather patterns), thereby increasing the signal-to-noise ratio of the measured signal.  *Id.* at 16:61–17:13.

89.     The '484 Patent also discloses pattern matching and other software techniques for improved identification of different blood constituents, as well as value-add services that may be provided by wirelessly communicating the monitored data to a handheld device such as a smartphone, and then wirelessly communicating the processed data to the cloud for storing, processing, and transmitting to several locations. *See, e.g., id.* at 3:23–30, 12:44–67, 14:64–15:7 and 32:25–34:22.

90.     The asserted claims of the '484 Patent comprise at least the following physical components: a user wearable device; semiconductor sources of light, one or more lenses, detectors, an analog to digital converter, a smartphone or tablet comprising a wireless receiver, a wireless transmitter, a display, a speaker, a button or knob, a microprocessor, and a touch screen; and a cloud computing platform. The one or more lenses deliver a lens output light to tissue. The detection system is configured to be synchronized to the light source and its spatially separated detectors are configured to receive output light reflected from the tissue and generate an output signal indicative of one or more physiological parameters. At least one analog to digital converter

is coupled to the detectors. The smartphone or tablet is configured to receive and process a portion

of the output signal, and the cloud is configured to receive over a wireless transmission link an

output status comprising the portion of the processed output signal and to process the received

output status. *See*, *e.g.*, '484 Patent, claim 3 and 8. Thus, the asserted claims of the '484 Patent are

each directed to a physical system and are not directed to an abstract idea.

91.     The asserted claims of the '484 Patent further recite the capability of increasing the

signal-to-noise ratio by increasing light intensity and pulse rate of at least one of the semiconductor

sources, as well as the capability to increase the signal-to-noise ratio by comparing a first signal

generated responsive to light received while the semiconductor sources are off to a second signal

generated responsive to light received while at least one of the semiconductor sources is on. *Id.*

The wearable device of the asserted claims also has the capability to identify an object and to

compare a property of the output signal to a threshold. *Id.* These elements provide for the unique

and unconventional application of signal processing to generate and measure signals with a greater

signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive

measurements of physiological parameters and identification of objects such as blood constituents

of a user.

92.     Certain of the asserted claims of the '484 Patent include additional elements that

provide further beneficial enhancements, including an amplifier coupled to the detectors to

improve detection sensitivity (claims 3 and 9), that the wearable device is configured to use

artificial intelligence for processing the output signal (claims 10 and 11), and/or that the wearable

device is configured to use pattern identification or classification based on the output signal (claims

11 and 12).

93.    Thus, the asserted claims of the '484 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '484 Patent.

**U.S. Patent No. 10,874,304**

94.    On December 29, 2020, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 10,874,304 ("the '304 Patent"), entitled "Semiconductor Source Based Near Infrared Measurement Device with Improved Signal-to-Noise Ratio." The '304 Patent is attached as Exhibit 4.

95.    Plaintiff is the assignee of all rights, title, and interest in and to the '304 Patent and, at a minimum, of all substantial rights in the '304 Patent, and possesses all rights of recovery, whether legal or equitable, under the '304 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

96.    The '304 Patent is valid and enforceable.

97.    The '304 Patent is related through a chain of continuation applications to the '484 Patent and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

98.    The asserted claims of the '304 Patent comprise at least the following physical components: a light source comprising semiconductor sources for generating an optical beam; a device for generating and delivering an input optical beam / analysis output beam to a sample or tissue; and a receiver or measurement device configured to capture a portion of the optical beam reflected from the sample or tissue and to generate an output signal representing a non-invasive

measurement on blood contained within the sample or tissue (*see* claims 1, 11, and 19). Certain claims also include a smartphone or tablet configured to receive and process a portion of the output signal, store and display the processed output signal, and wirelessly transmit a portion of the processed output signal, as well as a cloud computing platform configured to receive a portion of the wirelessly transmitted processed output signal and to process and store the resulting processed data (*see* claim 1 and 11). Thus, the asserted claims of the '304 Patent are each directed to a physical system or device and are not directed to an abstract idea.

99.    The asserted claims of the '304 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of or modulating light sources, or by differencing a first signal generated responsive to light received while the semiconductor sources are off and a second signal generated responsive to light received while at least one of the semiconductor sources is on (*see* claims 1, 11, and 19). These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with the blood of a user.

100.    Certain of the asserted claims of the '304 Patent include additional elements that provide further beneficial enhancements, such as particular types of semiconductor sources (claims 2 and 14), particular functionality for increasing light intensity (claim 3), a particular positioning, configuration, and arrangement of detectors and semiconductor sources along a first and a second arc, respectively (claims 4, 15 and 21), artificial intelligence- based pattern identification or classification and identification of an object applying regression signal processing methodologies or multivariate techniques (claim 12), and capability to increase signal-to-noise ratio by increasing a pulse rate of a semiconductor source (claims 13 and 20).

101.    Thus, the asserted claims of the '304 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters and/or identification of associated objects. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '304 Patent.

### U.S. Patent No. 11,160,455

102.    On November 2, 2021, after a full and fair examination, the United States Patent and Trademark Office issued U.S. Patent No. 11,160,455 ("the '455 Patent"), entitled "Multi-Wavelength Wearable Device for Non-Invasive Blood Measurements in Tissue." The '455 Patent is attached as Exhibit 5.

103.    Plaintiff is the assignee of all rights, title, and interest in and to the '455 Patent and possesses all rights of recovery, whether legal or equitable, under the '455 Patent, including the right to recover damages for past, present, and future infringement, and to obtain injunctive relief.

104.    The '455 Patent is valid and enforceable.

105.    The '455 Patent is related through a chain of continuation applications to the '484 Patent and discloses and expands upon at least the same inventive solutions to technical challenges associated with non-invasive physiological parameters.

106.    The asserted claims of the '455 Patent comprise at least the following physical components: a light source comprising a driver and semiconductor light sources; one or more lenses configured to receive light from the light emitting diodes and to deliver a lens output light to tissue; a detection system comprising spaced detectors and an analog-to-digital converter and configured to receive lens output light reflected from the tissue and to generate an output signal

indicative of one or more physiological parameters; and a smartphone or tablet configured to receive and process a portion of the output signal, and store and display the processed output signal (*see* claim 1, 8, and 15). Thus, the asserted claims of the '455 Patent are each directed to a physical system or device and are not directed to an abstract idea.

107.    The asserted claims of the '455 Patent further recite the capability of increasing the signal-to-noise ratio by increasing the light intensity of light sources, or by comparing a first signal generated responsive to light received while the semiconductor sources are off to a second signal generated responsive to light received while at least one of the semiconductor sources is on (*see* claims 1, 8, and 15). These elements provide for the unique and unconventional application of signal processing to generate and measure signals with a greater signal-to-noise ratio than the prior art, yielding more accurate and reliable non-invasive measurements of physiological parameters associated with a user.

108.    Certain of the asserted claims of the '455 Patent include additional elements that provide further beneficial enhancements, such as semiconductor light sources outputting light comprising three optical wavelengths (claims 1 and 16), semiconductor sources comprising six light emitting diodes (claims 2, 8, and 15), semiconductor sources and detectors located on one or more arcs (claims 2, 9, and 15), and semiconductor sources outputting optical light comprising wavelengths between 600 nm and 1000 nm to measure a level of oxy-hemoglobin and deoxy-hemoglobin (claims 3, 11, and 15).

109.    Thus, the asserted claims of the '455 Patent are directed to specific improvements to systems for non-invasive monitoring of physiological parameters. The claims are directed to a specific field of application, do not preempt others from using the general concept of optical light-

based physiological measurements, and recite more than generic computer functionality and elements that were not purely conventional as of the priority date of the '455 Patent.

**Knowledge of the Asserted Patents**

110.    Defendants have actual notice of the Asserted Patents and the infringements alleged herein at least upon service of this Complaint.

111.    Samsung has known of the Asserted Patents prior to the filing of this Complaint by virtue of direct interactions between Omni MedSci's principal, Dr. Islam, and persons and entities affiliated with Samsung.

112.    On April 10, 2017, Dr. Won Pyo Hong, President and Chief Executive Officer of Samsung SDS Co., Ltd., was presented with the inaugural ECE Alumni Impact Award from the Electrical and Computer Engineering department at the University of Michigan.[1]

113.    On April 10, 2017, Dr. Islam met one-on-one with Dr. Hong concerning Omni MedSci's proprietary and patented technology related to personalized medicine. Dr. Islam explained his work and developments using light sources for medical applications in wearable measurement devices, such as watches, and specifically identified several Omni MedSci patents, including the '868 Patent.

114.    Dr. Hong gave a lecture on "Samsung Innovation" later that day, during which Dr. Hong referenced his meeting with Dr. Islam as providing insights regarding the importance of finding ways to increase signal-to-noise ration of wearable devices used for physiological measurements.

---

[1] *See Won Pyo Hong, President of Samsung SDS, Presented with Inaugural ECE Alumni Impact Award*, at https://ece.engin.umich.edu/stories/won-pyo-hong-president-of-samsung-sds-presented-with-inaugural-ece-alumni-impact-award (last visited on Dec. 20, 2024).

115.    The meeting with Dr. Hong eventually led to an introduction to a SEC Senior Manager, Sung Gyu Choi.

116.    On July 17, 2017, Dr. Islam, on behalf of Omni MedSci, participated in a virtual meeting with Mr. Choi. During the meeting, Dr. Islam presented on Omni MedSci's patented and proprietary technology, including the '868 and '533 Patents, directed to improving the signal-to-noise ratio for increased accuracy in obtaining health measurements via wearable devices as well as to wearable physiological sensor devices integrated with smart devices, cloud platforms, and display devices.

117.    On August 26, 2021, Dr. Islam, on behalf of Omni MedSci, participated in a meeting with Leo Lautenschlager, a senior manager with the automotive division of a SEC subsidiary. Dr. Islam presented information in relation to applications for the Omni MedSci technology such as contactless vital signs measurements for driver monitoring systems and specifically identified several Omni MedSci patents, including the '533 Patent, '484 Patent and '304 Patent.

118.    Dr. Islam continued communicating with employees of this SEC subsidiary until early 2023.

119.    At Mr. Lautenschlager's request, Dr. Islam provided additional materials concerning Omni MedSci's patented and proprietary technology, which, on information and belief, were then presented to SEC.

120.    Mr. Lautenschlager also introduced Dr. Islam to employees with other SEC subsidiaries.

121.    On October 22, 2021, Dr. Islam met face-to-face with Mr Lautenschlager, Badri Padmanabhan, Sanjith Thayyilthodiyil, Kevin J. Lee, and others.

122.    At the October 22 meeting, Dr. Islam presented on Omni MedSci's patented and proprietary technology, including the '484 and '304 Patents, directed to vital signs monitoring systems.

123.    On March 2, 2023, Dr. Islam again met face-to-face with Mr. Padmanabhan on Omni MedSci's proprietary and patented technology, including the '533, '484, '304, and '455 Patents, directed to vital signs monitoring systems.

124.    On information and belief, Ōura had actual notice of the '455 Patent and the '533 Patent prior to the filing of this Compliant through its efforts to patent related technologies. U.S. Patent No. 12,013,725 ("the '725 Patent") issued to Ōuraring Inc. on June 18, 2024. The '725 Patent identifies on its face the '455 Patent and the '533 Patent.

125.    On information and belief, the Defendants each have lawyers and other active agents who regularly review patents and published patent applications relevant to the technology in the field of the Asserted Patents. The timing, circumstances, and extent of each Defendant obtaining actual knowledge of the Asserted Patents prior to commencement of this lawsuit will be confirmed during discovery.

## THE ACCUSED SYSTEMS

### Samsung Devices

126.    Defendant Samsung makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches. These smartwatches include, among others, the Galaxy Watch, the Galaxy Watch Active and Active2, the Galaxy Watch3, the Galaxy Watch4, the Galaxy Watch5, the Galaxy Watch6, the Galaxy Watch7, and the Galaxy Watch Ultra (each a "Samsung Smartwatch"). The Samsung Smartwatches include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are

designed and intended for use with a smartphone or tablet computer.  Samsung actively markets and supports sales of Samsung Smartwatches through its websites and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

127.    Samsung also makes, uses, sells, offers for sale, and/or imports into the United States smartphones, such as Samsung Galaxy A series phones, Samsung Galaxy M series phones, Samsung Galaxy S series phones, and Samsung Galaxy Z series phones (each a "Samsung Phone") as well as tablet computers, such as Samsung Galaxy Tab A series tablets, Samsung Galaxy Tab S series tablets, and Samsung Galaxy Tab Active series tablets (each a "Samsung Tablet"). Samsung also provides a cloud computing platform, such as the Samsung Cloud. Samsung also provides software applications, such as the Samsung Health App, which is configured to integrate Samsung Smartwatch products for use with iOS or Android OS smartphones and tablets, including Samsung Phone and Samsung Tablet products.

128.    When the user wears a Samsung Smartwatch on their wrist, the watch measures physiological parameters using various hardware components, such as Samsung's "BioActive sensor." The Samsung Smartwatch products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet computer running a compatible mobile app and operable to transfer of associated information to a cloud computing platform such as the Samsung Cloud. Thus, Samsung provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Samsung Smartwatch.

129.    Samsung also makes, uses, sells, offers for sale, and/or imports into the United States smart rings, such as Samsung Galaxy Ring ("Samsung Ring"). When the user wears a

Samsung Ring on their finger, the ring measures physiological parameters using various hardware components, such as Samsung's "Bio-signal Sensor." The Samsung Ring products are also configured to transfer information related to these parameters to an Android OS smartphone or tablet computer running a compatible mobile app and operable to transfer associated information to a cloud computing platform such as the Samsung Cloud. Thus, Samsung provides and supports multiple components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Samsung Ring.

### OnePlus Devices

130.    Defendant OnePlus makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches. These smartwatches include, among others, OnePlus Watch, OnePlus Watch 2, and OnePlus Watch 2R series watches (each a "OnePlus Smartwatch"). The OnePlus Smartwatch products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an Android OS smartphone or tablet computer. OnePlus actively markets and supports sales of OnePlus Smartwatch products through its websites and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

131.    OnePlus also makes, uses, sells, offers for sale, and/or imports into the United States smartphones, such as OnePlus 6 and 6T, OnePlus 7 and 7 Pro, OnePlus 7T and 7T Pro, OnePlus 8 and 8 Pro, OnePlus 8T, OnePlus 9 and 9 Pro, OnePlus 10 Pro and 10T, OnePlus Ace Pro, OnePlus 11 and 11R, OnePlus 12 and 12R, OnePlus Open, and OnePlus Nord N30 series smartphones (each a "OnePlus Phone") as well as tablet computers, such as OnePlus Pad and OnePlus Pad 2 series tablets (each a "OnePlus Tablet"). OnePlus also provides a cloud computing

platform. OnePlus also provides software applications, such as the OnePlus Health app and the OHealth app, configured to integrate OnePlus Smartwatch products for use with Android OS smartphones and tablets, including OnePlus Phone products and OnePlus Tablet products.

132.    When the user wears a OnePlus Smartwatch on their wrist, the watch measures physiological parameters using various hardware components. The OnePlus Smartwatch products are also configured to transfer information related to these parameters to an Android OS smartphone or tablet computer running a compatible mobile app and capable of transferring associated information to a cloud computing platform such as the OnePlus Cloud. Thus, OnePlus provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a OnePlus Smartwatch.

**Fossil Devices**

133.    Defendant Fossil makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartwatches. These smartwatches include, among others, Fossil Gen 1 series watches, Fossil Gen 2 series watches, Fossil Gen 3 series watches, Fossil Gen 4 series watches, Fossil Gen 5 series watches, and Fossil Gen 6 series watches (each a "Fossil Smartwatch"). The Fossil Smartwatch products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an iOS or Android OS smartphone or tablet computer. Fossil actively markets and supports sales of Fossil Smartwatch products through its websites, Fossil retail stores and other means, and sells these smartwatches to retailers, distributors, and/or other resellers.

134.    Fossil also provides software applications, such as the Fossil Smartwatches App or Wellness Watch App, configured to integrate Fossil Smartwatch products for use with iOS or

Android OS smartphones and tablets, including Samsung Phone products, Samsung Tablet products, OnePlus Phone products, and OnePlus Tablet products.

135.    When the user wears a Fossil Smartwatch on their wrist, the watch measures physiological parameters using various hardware components. The Fossil Smartwatch products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform. Thus, Fossil provides and supports multiple hardware and software components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of a Fossil Smartwatch.

**Ōura Devices**

136.    Defendant Ōura makes, uses, sells, offers for sale, and/or imports into the United States a variety of smart rings. These smart rings include, among others, Gen 1, Gen 2, Gen 3, and Gen 4 series smart rings (each an "Ōura Ring"). The Ōura Ring products include capabilities for measuring one or more physiological parameters of the user, such as heartbeat and blood oxygen level, and they are designed and intended for use with an iOS and Android OS smartphone or tablet computer. Ōura actively markets and supports sales of Ōura Ring products through its websites and other means, and sells these smart rings to retailers, distributors, and/or other resellers.

137.    Ōura also provides a cloud computing platform, such as the Ōura Cloud. Ōura also provides software applications, such as the Ōura app, configured to integrate Ōura Ring products for use with iOS and Android OS smartphones and tablets, including Samsung Phone products, Samsung Tablet products, OnePlus Phone products and OnePlus Tablet products.

138.    When the user wears an Ōura Ring on their finger, the ring measures physiological parameters using various hardware components. The Ōura Ring products are also configured to transfer information related to these parameters to an iOS or Android OS smartphone or tablet running a compatible mobile app and capable of transferring associated information to a cloud computing platform such as the Ōura Cloud. Thus, Ōura provides and supports multiple components designed and intended to be integrated into a complete system for measuring, processing, storing and displaying one or more physiological parameters of a user of an Ōura Ring.

### Count I: Infringement of the '868 Patent
### (Against All Defendants)

139.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 138 above.

140.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least claims 7 and 9, within the United States and within this District. Samsung has been engaged in one or more of these direct infringing activities related to its Samsung Smartwatch, Samsung Phone, and Samsung Tablet products (collectively, "Samsung Products"). Samsung has sold the Samsung Products to distributors, retailers, and/or other customers throughout the United States, and has actively marketed and supported sales. The Samsung Smartwatch products are designed to connect to and work in concert with the Samsung Phone and Samsung Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has marketed and promoted the compatibility between the Samsung Products for providing an integrated diagnostic

system, and users need only perform simple steps to connect a Samsung Smartwatch with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least claims 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising Samsung Products.

141.    Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the Samsung Products is provided in the claim chart attached as Exhibit 6.  Exhibit 6 demonstrates how the '868 Patent is infringed by reference to particular Samsung Smartwatches, Samsung Phones, Samsung Tablets, and Samsung's Cloud, which, on information and belief, are representative of the infringing aspects of at least the Samsung Products identified in Paragraphs 126–129 above. The attached infringement chart is based on Plaintiff's current understanding of the Samsung Products based on information publicly available at the time of filing this Complaint. The selection of claims and products in Exhibit 6 is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

142.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has indirectly infringed the '868 Patent, including at least claims 7 and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

143.    Samsung's customers and other end-users have directly infringed at least by making and using infringing diagnostic systems comprised of Samsung Smartwatch products integrated with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. Customers and end users have made infringing diagnostic systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 7 and 9, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used the subject matter of asserted system claims 7 and 9 by placing the diagnostic systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Samsung Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

144.    Samsung has had previous actual notice of the '868 Patent prior to the filing of this Complaint as alleged in Paragraphs 111–123 and 125 above. The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '868 Patent prior to commencement of this lawsuit will be confirmed during discovery.

145.    Samsung has actively induced third parties, including customers and end-users, to make and use infringing diagnostic systems incorporating Samsung Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung has induced such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung has induced direct infringement by such third parties by (i) selling the Samsung Smartwatch products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a diagnostic system that infringes the '868 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '868 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch products and other Samsung Products in their customary way; (vi) advertising and promoting the Samsung Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Products including the physiological diagnostic features thereof.

146.    Upon gaining knowledge of the '868 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Products infringe the '868 Patent.  Despite knowledge of the '868 Patent, Samsung has continued to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '868 patent. Samsung has performed these acts with the intent, or willful blindness, that the induced acts directly infringe the '868 Patent. Samsung has directly benefitted from and actively and knowingly encourages customers and end-users to make and use infringing diagnostic systems incorporating the Samsung Smartwatch products. On information and belief, Samsung has engaged in activities constituting inducement of infringement with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '868 Patent.

147.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to the direct infringement by customers, resellers and/or end users of infringing physiological diagnostic systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 7 and 9 of the '868 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

148.    Samsung's direct and indirect infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

149.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung has infringed the '868 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continued its infringement notwithstanding actual knowledge of the '868 Patent and without a good faith basis to believe that its activities did not infringe any valid claim of the '868 Patent. Samsung's infringement of the '868 Patent, following its knowledge of the '868 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

150.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least claim 7and 9, within the United States and within this District. OnePlus has been engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products (collectively, "OnePlus Products"). OnePlus sold the OnePlus Products to distributors, retailers, and/or other customers throughout the United States, and actively marketed and supported sales. The OnePlus Smartwatch products are designed to connect

to and work in concert with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus Products for providing an integrated diagnostic system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least claim 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising OnePlus Products.

151.    Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the OnePlus Products is provided in the claim chart attached as Exhibit 7.  Exhibit 7 demonstrates how the '868 Patent is infringed by reference to particular OnePlus Smartwatches, OnePlus Phones, OnePlus Tablets, and the OnePlus Cloud, which, on information and belief, are representative of the infringing aspects of at least the OnePlus Products identified in Paragraphs 130–132 above. The attached infringement chart is based on Plaintiff's current understanding of the OnePlus Products based on information publicly available at the time of this filing. This selection of claims and products in Exhibit 7 is exemplary and should not be considered limiting of OnePlus's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

152.    OnePlus's infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

153.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least claim 7 and 9, within the United States. Fossil has been engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products. Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Fossil Smartwatch products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Fossil has marketed and promoted the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated diagnostic system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least claim 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising Fossil Smartwatch products.

154.    Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the Fossil Smartwatch products is provided in the claim chart attached as Exhibit 8. Exhibit 8 demonstrates how the '868 Patent is infringed by reference to particular Fossil Smartwatch products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and a Fossil-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Fossil Smartwatch products identified in Paragraphs 133–135 above. The attached infringement chart is based on Plaintiff's current understanding of the Fossil Smartwatch products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 8 is exemplary and should not be considered limiting of Fossil's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

155.    Fossil's infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

156.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has directly infringed the '868 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using diagnostic systems that embody the inventions claimed in the '868 Patent, in particular, at least claims 7 and 9, within the United States. Ōura has been engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura has sold the Ōura Ring products through to distributors, retailers, and/or other customers throughout the United States, and actively marketed and supported sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone

or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone, and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has marketed and promoted the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated diagnostic system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have directly infringed at least claim 7 and 9 of the '868 Patent in connection with development, testing, and/or demonstration of diagnostic systems comprising Ōura Ring products.

157.    Notice of the factual bases of Plaintiff's allegations of infringement of the '868 Patent by the Ōura Ring products is provided in the claim chart attached as Exhibit 9.  Exhibit 9 demonstrates how the '868 Patent is infringed by reference to particular Ōura Ring products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 136–138 above. The attached infringement chart is based on Plaintiff's current understanding of the Ōura Ring products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 9 is exemplary and should not be considered limiting of Ōura's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited

throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

158.    Ōura's infringement of the '868 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

## Count II:  Infringement of the '533 Patent
### (Against All Defendants)

159.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 158 above.

160.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least claims 11 and 12, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartwatch, Samsung Ring, Samsung Phone, and Samsung Tablet products (collectively, "Samsung Products"). Samsung sells the Samsung Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Samsung Smartwatch and Samsung Ring products are designed to connect to and work in concert with the Samsung Phone and Samsung Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has and continues to market and promote the compatibility between the Samsung Products for providing an integrated measurement system, and users need only perform simple steps to connect a Samsung Smartwatch or Samsung Ring with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and

supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Samsung Products.

161.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the Samsung Products is provided in the claim chart attached as Exhibits 10 and 11. Exhibits 10 and 11 demonstrate how the '533 Patent is infringed by reference to particular Samsung Smartwatch, Samsung Ring, Samsung Phone, Samsung Tablet, and Samsung Cloud, which, on information and belief, are representative of the infringing aspects of at least the Samsung Products identified in Paragraphs 126–129 above. The attached infringement charts are based on Plaintiff's current understanding of the Samsung Products based on information publicly available at the time of this filing. The selection of claims and products in Exhibits 10 and 11 are exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

162.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '533 Patent, including at least claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

163.    Samsung's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Samsung Smartwatch or Samsung Ring

products integrated as intended with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 11 and 12, including, for example, by connecting and/or synching the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Samsung Smartwatch on their wrist or a Samsung Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

164.    Samsung has had previous actual notice of the '533 Patent prior to the filing of this Complaint as alleged in Paragraphs 111–123 and 125 above. Samsung also has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit will be confirmed during discovery.

165.    Samsung actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating a Samsung Smartwatch or Samsung Ring operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartwatch and Samsung Ring products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatch and Samsung Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch products, Samsung Ring products and other Samsung Products in their customary way; (vi) advertising and promoting the Samsung Products; and/or

(vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Products including the physiological measurement features thereof.

166.    Upon gaining knowledge of the '533 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Products infringe the '533 Patent.  Despite knowledge of the '533 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '533 patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Samsung Smartwatch or Samsung Ring products. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

167.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch and/or Samsung Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use

in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.    Samsung's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

169.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '533 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. Samsung's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

170.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least claims 11 and 12, within the United States and within this District.

OnePlus has been and is engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products (collectively, "OnePlus Products"). OnePlus sells the OnePlus Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The OnePlus Smartwatch products are designed to connect to and operate with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus Products for providing an integrated measurement system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising OnePlus Products.

171.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the OnePlus Products is provided in the claim chart attached as Exhibit 12. Exhibit 12 demonstrates how the '533 Patent is infringed by reference to particular OnePlus Smartwatches, OnePlus Phones, OnePlus Tablets, and the OnePlus Cloud, which, on information and belief, are representative of the infringing aspects of at least the OnePlus Products identified in Paragraphs 130–132 above. The attached infringement chart is based on Plaintiff's current understanding of the OnePlus Products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 12 is exemplary and should not be considered limiting

of OnePlus's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

172.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '533 Patent, including at least claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

173.    OnePlus's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of OnePlus Smartwatch products integrated as intended with a OnePlus Phone, a OnePlus Tablet and/or with another Android OS smartphone or tablet (including the Samsung Phone and Samsung Tablet products) running a compatible health mobile app provided and/or supported by OnePlus. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 11 and 12, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a OnePlus Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure,

monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

174.    OnePlus has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of OnePlus obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit will be confirmed during discovery.

175.    OnePlus actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating a OnePlus Smartwatch operating in its normal and customary way and in accordance with their intended functionality and purpose. OnePlus induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the OnePlus Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the OnePlus Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, OnePlus induces direct infringement by such third parties by (i) selling the OnePlus Smartwatch products to third parties and providing software designed to integrate such products with OnePlus Phone products, OnePlus Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of OnePlus Smartwatch products are operated such that, when coupled as

intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by OnePlus; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the OnePlus Smartwatch products and other OnePlus Products in their customary way; (vi) advertising and promoting the OnePlus Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the OnePlus Products including the physiological measurement features thereof.

176.    Upon gaining knowledge of the '533 Patent, it became apparent to OnePlus that the manufacture, sale, importing, offer for sale, or use of the OnePlus Products infringe the '533 Patent.  Despite knowledge of the '533 Patent, OnePlus continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '533 patent. OnePlus performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. OnePlus directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the OnePlus Smartwatch products. On information and belief, OnePlus will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

177.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing OnePlus Smartwatch products and software

designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

178.    OnePlus's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless OnePlus ceases its infringing activities, it will continue to injure Plaintiff.

179.    On information and belief, OnePlus acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that OnePlus should have known about it. OnePlus continues to infringe the '533 Patent by making, using, selling, offering for sale and/or importing in the United States the OnePlus Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. OnePlus continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. OnePlus's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

180.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using

measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least claims 11 and 12, within the United States. Fossil has been and is engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products. Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Fossil Smartwatch products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Fossil has and continues to market and promote the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue to directly infringe at least claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Fossil Smartwatch products.

181.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the Fossil Smartwatch products is provided in the claim chart attached as Exhibit 13. Exhibit 13 demonstrates how the '533 Patent is infringed by reference to particular Fossil Smartwatch products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and a Fossil-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Fossil Smartwatch products

identified in Paragraphs 133–135 above. The attached infringement chart is based on Plaintiff's current understanding of the Fossil Smartwatch products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 13 is exemplary and should not be considered limiting of Fossil's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

182.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '533 Patent, including at least claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

183.    Fossil's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Fossil Smartwatch products integrated as intended with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Fossil. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 11 and 12, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Fossil Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or

tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

184.    Fossil has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Fossil obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit will be confirmed during discovery.

185.    Fossil actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Fossil Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Fossil induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Fossil Smartwatch products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Fossil Smartwatch products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Fossil induces direct infringement by such third parties by (i) selling the Fossil Smartwatch products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Fossil, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533 Patent; (iii) dictating

via their design and instructions to users thereof the manner in which the physiological measurement features of Fossil Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Fossil; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Fossil Smartwatch products in their customary way; (vi) advertising and promoting the Fossil Smartwatch products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Fossil Smartwatch products including the physiological measurement features thereof.

186.    Upon gaining knowledge of the '533 Patent, it became apparent to Fossil that the manufacture, sale, importing, offer for sale, or use of the Fossil Smartwatch products infringe the '533 Patent. Despite knowledge of the '533 Patent, Fossil continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '533 patent. Fossil performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. Fossil directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Fossil Smartwatch products. On information and belief, Fossil will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

187.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of

infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Fossil Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

188.    Fossil's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Fossil ceases its infringing activities, it will continue to injure Plaintiff.

189.    On information and belief, Fossil acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Fossil should have known about it. Fossil continues to infringe the '533 Patent by making, using, selling, offering for sale and/or importing in the United States the Fossil Smartwatch products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Fossil continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. Fossil's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

190.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '533 Patent pursuant to 35 U.S.C. §

271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '533 Patent, in particular, at least claims 11 and 12, within the United States. Ōura has been and is engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura sells the Ōura Ring products through to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 11 and 12 of the '533 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Ōura Ring products.

191.    Notice of the factual bases of Plaintiff's allegations of infringement of the '533 Patent by the Ōura Ring products is provided in the claim chart attached as Exhibit 14. Exhibit 14 demonstrates how the '533 Patent is infringed by reference to particular Ōura Ring products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 136–138 above. The

attached infringement chart is based on Plaintiff's current understanding of the Ōura Ring products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 14 is exemplary and should not be considered limiting of Ōura's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

192.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '533 Patent, including at least claims 11 and 12, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

193.    Ōura's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Ōura Ring products integrated as intended with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or or supported by Ōura. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 11 and 12, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 11 and 12 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing an Ōura Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated

cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

194.    Ōura has had actual notice of the '533 Patent prior to the filing of this Complaint as alleged in Paragraphs 124–125 above. Ōura also has actual notice of the '533 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '533 Patent prior to commencement of this lawsuit will be confirmed during discovery.

195.    Ōura actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating an Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose. Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring  products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '533 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '533

Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Ōura Ring products including the physiological measurement features thereof.

196.    Upon gaining knowledge of the '533 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '533 Patent. Despite knowledge of the '533 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '533 patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '533 Patent. Ōura directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '533 Patent.

197.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant

to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 11 and 12 of the '533 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

198.    Ōura's direct and indirect infringement of the '533 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

199.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it. Ōura continues to infringe the '533 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Ōura continues its infringement notwithstanding actual knowledge of the '533 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '533 Patent. Ōura's infringement of the '533 Patent, following its knowledge of the '533 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### Count III:  Infringement of the '484 Patent
### (Against Samsung, OnePlus, and Fossil)

200.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 199 above.

201.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '484 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '484 Patent, in particular, at least claim 3, 8, 9, and 10, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartwatch, Samsung Phone, and Samsung Tablet products. Samsung sells the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Samsung Smartwatch products are designed to connect to and work in concert with the Samsung Phone and Samsung Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has and continues to market and promote the compatibility between the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products for providing an integrated measurement system, and users need only perform simple steps to connect a Samsung Smartwatch with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 3, 8, 9, and 10 of the '484 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Samsung Smartwatch and Samsung Phone or Samsung Tablet products.

202.    Notice of the factual bases of Plaintiff's allegations of infringement of the '484 Patent by the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products is provided in

the claim chart attached as Exhibit 15. Exhibit 15 demonstrates how the '484 Patent is infringed by reference to particular Samsung Smartwatch products, Samsung Phone products, Samsung Tablet products, and Samsung cloud, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products identified in Paragraphs 126–129 above. The attached infringement chart is based on Plaintiff's current understanding of the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 15 is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

203. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '484 Patent, including at least claims 3, 8, 9, and 10, , pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

204. Samsung's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Samsung Smartwatch integrated with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 3, 8, 9, and 10, including, for

example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 3, 8, 9, and 10by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Samsung Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

205.    Samsung has had previous actual notice of the '484 Patent prior to the filing of this Complaint as alleged in Paragraphs 111–123 and 125 above. Samsung also has actual notice of the '484 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '484 Patent prior to commencement of this lawsuit will be confirmed during discovery.

206.    Samsung actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Samsung Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartwatch, Samsung Phone and Samsung Tablet products, and providing instructions, documentation, and other information to customers and end-users suggesting they use such products in an infringing

manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartwatch products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '484 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '484 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatches are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch, Samsung Phone and Samsung Tablet products in their customary way; (vi) advertising and promoting the Samsung Smartwatch, Samsung Phone and Samsung Tablet products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartwatch, Samsung Phone and Samsung Tablet products including the physiological measurement features thereof.

207.    Upon gaining knowledge of the '484 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartwatch products infringe the '484 Patent.  Despite knowledge of the '484 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '484 Patent. Samsung performs

these acts with the intent, or willful blindness, that the induced acts directly infringe the '484 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Samsung Smartwatch products. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '484 Patent.

208.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 3, 8, 9, and 10of the '484 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

209.    Samsung's direct and indirect infringement of the '484 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

210.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either

known or so obvious that Samsung should have known about it. Samsung continues to infringe the '484 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Smartwatch, Samsung Phone and Samsung tablet products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Samsung continues its infringement notwithstanding actual knowledge of the '484 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '484 Patent. Samsung's infringement of the '484 Patent, following its knowledge of the '484 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

211. OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '484 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '484 Patent, in particular, at least claims 8 and 9, within the United States and within this District. OnePlus has been and is engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products. OnePlus sells the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The OnePlus Smartwatch products are designed to connect to and work in concert with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus

Smartwatch, OnePlus Phone, and OnePlus Tablet products for providing an integrated measurement system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 8 and 9 of the '484 Patent in connection with development, testing, and/or demonstration of measurement systems comprising OnePlus Smartwatch and OnePlus Phone or OnePlus Tablet products.

212.    Notice of the factual bases of Plaintiff's allegations of infringement of the '484 Patent by the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products is provided in the claim chart attached as Exhibit 16.  Exhibit 16 demonstrates how the '484 Patent is infringed by reference to particular OnePlus Smartwatches, OnePlus Phones, OnePlus Tablets, and the OnePlus Cloud, which, on information and belief, are representative of the infringing aspects of at least the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products identified in Paragraphs 130–132 above. The attached infringement chart is based on Plaintiff's current understanding of the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 16 is exemplary and should not be considered limiting of OnePlus's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

213.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '484 Patent, including at least claims 8 and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

214.    OnePlus's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of a OnePlus Smartwatch integrated with a OnePlus Phone, a OnePlus Tablet and/or with another Android OS smartphone or tablet (including the Samsung Phone and Samsung Tablet products) running a compatible health mobile app provided and/or supported by OnePlus. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 8 and 9, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 8 and 9by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a OnePlus Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

215.     OnePlus has actual notice of the '484 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of OnePlus obtaining actual knowledge of the '484 Patent prior to commencement of this lawsuit will be confirmed during discovery.

216.     OnePlus actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating OnePlus Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. OnePlus induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products, and providing instructions, documentation, and other information to customers and end-users suggesting they use such products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, OnePlus induces direct infringement by such third parties by (i) selling the OnePlus Smartwatch products to third parties and providing software designed to integrate such products with OnePlus Phone products, OnePlus Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '484 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '484 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of OnePlus Smartwatches are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by OnePlus; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing

technical support, information, and instructions for assembling and operating the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products in their customary way; (vi) advertising and promoting the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products including the physiological measurement features thereof.

217.    Upon gaining knowledge of the '484 Patent, it became apparent to OnePlus that the manufacture, sale, importing, offer for sale, or use of the OnePlus Smartwatch products infringe the '484 Patent.  Despite knowledge of the '484 Patent, OnePlus continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '484 Patent. OnePlus performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '484 Patent. OnePlus directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the OnePlus Smartwatch products. On information and belief, OnePlus will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '484 Patent.

218.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing OnePlus Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers

networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 8 and 9 of the '484 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

219.    OnePlus's direct and indirect infringement of the '484 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless OnePlus ceases its infringing activities, it will continue to injure Plaintiff.

220.    On information and belief, OnePlus acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that OnePlus should have known about it. OnePlus continues to infringe the '484 Patent by making, using, selling, offering for sale and/or importing in the United States the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. OnePlus continues its infringement notwithstanding actual knowledge of the '484 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '484 Patent. OnePlus's infringement of the '484 Patent, following its knowledge of the '484 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

221.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '484 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using

measurement systems that embody the inventions claimed in the '484 Patent, in particular, at least claims 8 and 9, within the United States. Fossil has been and is engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products. Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Fossil Smartwatch products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Fossil has and continues to market and promote the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 8 and 9 of the '484 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Fossil Smartwatch products.

222.    Notice of the factual bases of Plaintiff's allegations of infringement of the '484 Patent by the Fossil Smartwatch products is provided in the claim chart attached as Exhibit 17. Exhibit 17 demonstrates how the '484 Patent is infringed by reference to particular Fossil Smartwatch products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and a Fossil-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Fossil Smartwatch products

identified in Paragraphs 133–135 above. The attached infringement chart is based on Plaintiff's current understanding of the Fossil Smartwatch products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 17 is exemplary and should not be considered limiting of Fossil's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

223.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '484 Patent, including at least claims 8 and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

224.    Fossil's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Fossil Smartwatch products integrated as intended with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Fossil. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 8 and 9, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 8 and 9by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Fossil Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an

associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

225.    Fossil has actual notice of the '484 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Fossil obtaining actual knowledge of the '484 Patent prior to commencement of this lawsuit will be confirmed during discovery.

226.    Fossil actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Fossil Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Fossil induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Fossil Smartwatch products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Fossil Smartwatch products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Fossil induces direct infringement by such third parties by (i) selling the Fossil Smartwatch products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Fossil, when such products are designed for use as a measurement system that infringes the '484 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '484 Patent; (iii) dictating

via their design and instructions to users thereof the manner in which the physiological measurement features of Fossil Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Fossil; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Fossil Smartwatch products in their customary way; (vi) advertising and promoting the Fossil Smartwatch products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Fossil Smartwatch products including the physiological measurement features thereof.

227.    Upon gaining knowledge of the '484 Patent, it became apparent to Fossil that the manufacture, sale, importing, offer for sale, or use of the Fossil Smartwatch products infringe the '484 Patent. Despite knowledge of the '484 Patent, Fossil continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '484 patent. Fossil performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '484 Patent. Fossil directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Fossil Smartwatch products. On information and belief, Fossil will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '484 Patent.

228.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of

infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Fossil Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 8 and 9 of the '484 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

229.    Fossil's direct and indirect infringement of the '484 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Fossil ceases its infringing activities, it will continue to injure Plaintiff.

230.    On information and belief, Fossil acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Fossil should have known about it. Fossil continues to infringe the '484 Patent by making, using, selling, offering for sale and/or importing in the United States the Fossil Smartwatch products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Fossil continues its infringement notwithstanding actual knowledge of the '484 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '484 Patent. Fossil's infringement of the '484 Patent, following its knowledge of the '484 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## Count IV:  Infringement of the '304 Patent
### (Against All Defendants)

231.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 230 above.

232.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least claims 1, 2, 11, 14, 19, and 20, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartwatch, Samsung Ring, Samsung Phone, and Samsung Tablet products (collectively, "Samsung Products"). Samsung sells the Samsung Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Samsung Smartwatch and Samsung Ring products are designed to connect to and work in concert with the Samsung Phone and Samsung Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has and continues to market and promote the compatibility between the Samsung Products for providing an integrated measurement system, and users need only perform simple steps to connect a Samsung Smartwatch or Samsung Ring with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 11, 14, 19, and 20 of the '304

Patent in connection with development, testing, and/or demonstration of measurement systems comprising Samsung Products.

233.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least claims 19 and 20 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Samsung Smartwatch and Samsung Ring wearable devices within the United States and within this District.

234.     Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the Samsung Products is provided in the claim chart attached as Exhibits 18 and 19. Exhibits 18 and 19 demonstrate how the '304 Patent is infringed by reference to particular Samsung Smartwatch products, Samsung Phone products, Samsung Tablet products, Samsung Ring, and Samsung cloud, which, on information and belief, are representative of the infringing aspects of at least the Samsung Products identified in Paragraphs 126–129 above. The attached infringement charts are based on Plaintiff's current understanding of the Samsung Products based on information publicly available at the time of this filing. The selection of claims and products in Exhibits 18 and 19 is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

235.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '304 Patent, including at least

claims 1, 2, 11, 14, 19, and 20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

236.    Samsung's customers and other end-users directly infringe at least claims 1, 2, 11, 14, 19, and 20at least by making and using infringing measurement systems comprised of Samsung Smartwatch or Samsung Ring products integrated with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 11, 14, 19, and 20, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of claims 1, 2, 11, 14, 19, and 20by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the measurement system of those claims by placing a Samsung Smartwatch on their wrist or a Samsung Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform. Samsung's customers and other end-users also directly infringe at least claims 1, 2, 11, 14, 19, and 20at least by using Samsung

Smartwatch or Samsung Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

237.    Samsung has had previous actual notice of the '304 Patent prior to the filing of this Complaint as alleged in Paragraphs 111–123 and 125 above. Samsung also has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit will be confirmed during discovery.

238.    Samsung actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Samsung Smartwatch or Samsung Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Samsung Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartwatch and Samsung Ring products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatch

products and Samsung Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch products, Samsung Ring products and other Samsung Products in their customary way; (vi) advertising and promoting the Samsung Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Products including the physiological measurement features thereof.

239.    Upon gaining knowledge of the '304 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Products infringe the '304 Patent.  Despite knowledge of the '304 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '304 patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Samsung Smartwatch or Samsung Ring products. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

240.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant

to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch products and/or Samsung Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

241.    Samsung's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

242.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '304 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. Samsung's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

243.     OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least claims 1, 2, 11, 14, 19, and 20, within the United States and within this District. OnePlus has been and is engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products (collectively, "OnePlus Products"). OnePlus sells the OnePlus Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The OnePlus Smartwatch products are designed to connect to and work in concert with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus Products for providing an integrated measurement system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 11, 14, 19, and 20of the '304 Patent in connection with development, testing, and/or demonstration of measurement systems comprising OnePlus Products.

244.     OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of

equivalents, by making, having made, using, selling, offering to sell, and/or importing the OnePlus Smartwatch wearable devices within the United States and within this District.

245.    Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the OnePlus Products is provided in the claim chart attached as Exhibit 20. Exhibit 20 demonstrates how the '304 Patent is infringed by reference to particular OnePlus Smartwatches, OnePlus Phones, OnePlus Tablets, and the OnePlus Cloud, which, on information and belief, are representative of the infringing aspects of at least the OnePlus Products identified in Paragraphs 130–132 above. The attached infringement chart is based on Plaintiff's current understanding of the OnePlus Products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 20 is exemplary and should not be considered limiting of OnePlus's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

246.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '304 Patent, including at least claims 1, 2, 11, 14, 19, and 20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

247.    OnePlus's customers and other end-users directly infringe at least claims 1, 2, 11, 14, 19, and 20 at least by making and using infringing measurement systems comprised of OnePlus Smartwatch products integrated with a OnePlus Phone, a OnePlus Tablet and/or with another Android OS smartphone or tablet (including the Samsung Phone and Samsung Tablet products) running a compatible health mobile app provided and/or supported by OnePlus. Customers and

end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 11, 14, 19, and 20, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of claims 1, 2, 11, 14, 19, and 20by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the measurement system of those claims by placing a OnePlus Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform. OnePlus's customers and other end-users also directly infringe at least claims 1, 2, 11, 14, 19, and 20 at least by using OnePlus Smartwatch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

248.    OnePlus has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of OnePlus obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit will be confirmed during discovery.

249.    OnePlus actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating OnePlus Smartwatch products operating in

their normal and customary way and in accordance with their intended functionality and purpose. OnePlus induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the OnePlus Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the OnePlus Products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, OnePlus induces direct infringement by such third parties by (i) selling the OnePlus Smartwatch products to third parties and providing software designed to integrate such products with OnePlus Phone products, OnePlus Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of OnePlus Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by OnePlus; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the OnePlus Smartwatch products and other OnePlus Products in their customary way; (vi) advertising and promoting the OnePlus Products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the OnePlus Products including the physiological measurement features thereof.

250.    Upon gaining knowledge of the '304 Patent, it became apparent to OnePlus that the manufacture, sale, importing, offer for sale, or use of the OnePlus Products infringe the '304

Patent.  Despite knowledge of the '304 Patent, OnePlus continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '304 patent. OnePlus performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. OnePlus directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the OnePlus Smartwatch products. On information and belief, OnePlus will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

251.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing OnePlus Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

252.    OnePlus's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless OnePlus ceases its infringing activities, it will continue to injure Plaintiff.

253.    On information and belief, OnePlus acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that OnePlus should have known about it. OnePlus continues to infringe the '304 Patent by making, using, selling, offering for sale and/or importing in the United States the OnePlus Products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. OnePlus continues its infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. OnePlus's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

254.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least claims 1, 2, 11, 14, 19, and 20, within the United States. Fossil has been and is engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products. Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Fossil Smartwatch products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform.

Fossil has and continues to market and promote the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Fossil Smartwatch products.

255.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Fossil Smartwatch wearable devices within the United States and within this District.

256.    Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the Fossil Smartwatch products is provided in the claim chart attached as Exhibit 21. Exhibit 21 demonstrates how the '304 Patent is infringed by reference to particular Fossil Smartwatch products, popular Android OS smartphone and tablet products such as Samsung Phone and Samsung Tablet products, and a Fossil-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Fossil Smartwatch products identified in Paragraphs 133–135 above. The attached infringement chart is based on Plaintiff's current understanding of the Fossil Smartwatch products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 21 is exemplary and should not be considered limiting of Fossil's infringement. Additional claims and products will be disclosed,

as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

257.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '304 Patent, including at least claims 1, 2, 11, 14, 19, and 20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

258.    Fossil's customers and other end-users directly infringe at least claims 1, 2, 11, 14, 19, and 20at least by making and using infringing measurement systems comprised of Fossil Smartwatch products integrated with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Fossil. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 11, 14, 19, and 20 including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 1, 2, 11, 14, 19, and 20by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Fossil Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to

access backup storage and further processing capabilities of a cloud computing platform. Fossil's customers and other end-users also directly infringe at least claims 1, 2, 11, 14, 19, and 20at least by using Fossil Smartwatch wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

259.    Fossil has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Fossil obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit will be confirmed during discovery.

260.    Fossil actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Fossil Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Fossil induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Fossil Smartwatch products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Fossil Smartwatch products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Fossil induces direct infringement by such third parties by (i) selling the Fossil Smartwatch products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Fossil, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of

Fossil Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Fossil; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Fossil Smartwatch products in their customary way; (vi) advertising and promoting the Fossil Smartwatch products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Fossil Smartwatch products including the physiological measurement features thereof.

261.    Upon gaining knowledge of the '304 Patent, it became apparent to Fossil that the manufacture, sale, importing, offer for sale, or use of the Fossil Smartwatch products infringe the '304 Patent. Despite knowledge of the '304 Patent, Fossil continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '304 patent. Fossil performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. Fossil directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Fossil Smartwatch products. On information and belief, Fossil will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

262.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and

elsewhere in the United States at least by providing Fossil Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

263.    Fossil's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Fossil ceases its infringing activities, it will continue to injure Plaintiff.

264.    On information and belief, Fossil acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Fossil should have known about it. Fossil continues to infringe the '304 Patent by making, using, selling, offering for sale and/or importing in the United States the Fossil Smartwatch products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Fossil continues its infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. Fossil's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

265.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using

measurement systems that embody the inventions claimed in the '304 Patent, in particular, at least claims 1, 2, 11, 14, 19, and 20, within the United States. Ōura has been and is engaged in one or more of these direct infringing activities related to its Ōura Ring products. Ōura sells the Ōura Ring products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Ōura Ring products are designed to connect to and work in concert with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Ōura, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Ōura has and continues to market and promote the compatibility between the Ōura Ring products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect an Ōura Ring with a smartphone or tablet enabled with an Ōura health mobile app and supported by an Ōura cloud. On information and belief, Plaintiff alleges that Ōura employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Ōura Ring products.

266.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has also in the past and continues to directly infringe at least claims 19 and 20 of the '304 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing the Ōura Ring wearable devices within the United States and within this District.

267.    Notice of the factual bases of Plaintiff's allegations of infringement of the '304 Patent by the Ōura Ring products is provided in the claim chart attached as Exhibit 22.  Exhibit 22 demonstrates how the '304 Patent is infringed by reference to particular Ōura Ring products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and Ōura cloud, which, on information and belief, are representative of the infringing aspects of at least the Ōura Ring products identified in Paragraphs 136–138 above. The attached infringement chart is based on Plaintiff's current understanding of the Ōura Ring products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 22 is exemplary and should not be considered limiting of Ōura's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

268.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '304 Patent, including at least claims 1, 2, 11, 14, 19, and 20, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

269.    Ōura's customers and other end-users directly infringe at least claims 1, 2, 11, 14, 19, and 20 at least by making and using infringing measurement systems comprised of Ōura Ring products integrated with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Ōura. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 11, 14, 19, and 20including, for

example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 1, 2, 11, 14, 19, and 20 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing an Ōura Ring on their finger and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform. Ōura's customers and other end-users also directly infringe at least claims 1, 2, 11, 14, 19, and 20 at least by using Ōura Ring wearable device products, and distributors and resellers directly infringe those claims by offering for sale and selling such wearable device products.

270.    Ōura has actual notice of the '304 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Ōura obtaining actual knowledge of the '304 Patent prior to commencement of this lawsuit will be confirmed during discovery.

271.    Ōura actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Ōura Ring products operating in their normal and customary way and in accordance with their intended functionality and purpose. Ōura induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Ōura Ring products, and providing instructions,

documentation, and other information to customers and end-users suggesting they use the Ōura Ring products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements. For example, on information and belief, Ōura induces direct infringement by such third parties by (i) selling the Ōura Ring products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Ōura, when such products are designed for use as a measurement system that infringes the '304 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '304 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Ōura Ring products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Ōura; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Ōura Ring products in their customary way; (vi) advertising and promoting the Ōura Ring products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Ōura products including the physiological measurement features thereof.

272.    Upon gaining knowledge of the '304 Patent, it became apparent to Ōura that the manufacture, sale, importing, offer for sale, or use of the Ōura Ring products infringe the '304 Patent. Despite knowledge of the '304 Patent, Ōura continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '304 patent. Ōura performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '304 Patent. Ōura directly benefits

from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Ōura Ring products. On information and belief, Ōura will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '304 Patent.

273.    Ōura, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Ōura Ring products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 11, 14, 19, and 20 of the '304 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

274.    Ōura's direct and indirect infringement of the '304 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Ōura ceases its infringing activities, it will continue to injure Plaintiff.

275.    On information and belief, Ōura acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Ōura should have known about it. Ōura continues to infringe the '304 Patent by making, using, selling, offering for sale and/or importing in the United States the Ōura Ring products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Ōura continues its

infringement notwithstanding actual knowledge of the '304 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '304 Patent. Ōura's infringement of the '304 Patent, following its knowledge of the '304 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

### Count V:  Infringement of the '455 Patent
### (Against Samsung, OnePlus, and Fossil)

276.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 275 above.

277.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '455 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the '455 Patent, in particular, at least claims 1, 2, 3, and 8, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its Samsung Smartwatch, Samsung Phone, and Samsung Tablet products. Samsung sells the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Samsung Smartwatch products are designed to connect to and work in concert with the Samsung Phone and Samsung Tablet products through related mobile apps provided by Samsung, which phones and tablets are operable to connect to a network to communicate with Samsung's cloud-based servers. Samsung has and continues to market and promote the compatibility between the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products for providing an integrated measurement system, and users need only perform simple steps to connect a Samsung Smartwatch

with a Samsung Phone or a Samsung Tablet enabled with a Samsung health mobile app and supported by a Samsung cloud. On information and belief, Plaintiff further alleges that Samsung employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 3, and 8 of the '455 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Samsung Smartwatch and Samsung Phone or Samsung Tablet products.

278.    Notice of the factual bases of Plaintiff's allegations of infringement of the '455 Patent by the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products is provided in the claim chart attached as Exhibit 23.  Exhibit 23 demonstrates how the '455 Patent is infringed by reference to particular Samsung Smartwatch products, Samsung Phone products, Samsung Tablet products, and Samsung Cloud, which, on information and belief, are representative of the infringing aspects of at least the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products identified in Paragraphs 128–131 above. The attached infringement charts are based on Plaintiff's current understanding of the Samsung Smartwatch, Samsung Phone, and Samsung Tablet products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 23 is exemplary and should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

279.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to indirectly infringe the '455 Patent, including at least

claims 1, 2, 3, and 8, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

280.    Samsung's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Samsung Smartwatch integrated as intended with a Samsung Phone, a Samsung Tablet and/or with another iOS or Android OS smartphone or tablet (including the OnePlus Phone and OnePlus Tablet products) running a compatible health mobile app provided and/or supported by Samsung. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 3, and 8, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 1, 2, 3, and 8 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Samsung Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

281.    Samsung has had previous actual notice of the '455 Patent prior to the filing of this Complaint as alleged in Paragraphs 111–123 and 125 above. Samsung also has actual notice of the '455 Patent and the infringement alleged herein at least upon the service of this Complaint.  The

timing, circumstances, and extent of Samsung obtaining actual knowledge of the '455 Patent prior to commencement of this lawsuit will be confirmed during discovery.

282.    Samsung actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Samsung Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Samsung induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Samsung Smartwatch, Samsung Phone and Samsung Tablet products, and providing instructions, documentation, and other information to customers and end-users suggesting they use such products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Samsung induces direct infringement by such third parties by (i) selling the Samsung Smartwatch products to third parties and providing software designed to integrate such products with Samsung Phone products, Samsung Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such products are designed for use as a measurement system that infringes the '455 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '455 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Samsung Smartwatches are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Samsung; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Samsung Smartwatch, Samsung Phone and Samsung Tablet products in their customary way;

(vi) advertising and promoting the Samsung Smartwatch, Samsung Phone and Samsung Tablet products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Samsung Smartwatch, Samsung Phone and Samsung Tablet products including the physiological measurement features thereof.

283.    Upon gaining knowledge of the '455 Patent, it became apparent to Samsung that the manufacture, sale, importing, offer for sale, or use of the Samsung Smartwatch products infringe the '455 Patent.  Despite knowledge of the '455 Patent, Samsung continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '455 Patent. Samsung performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '455 Patent. Samsung directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Samsung Smartwatch products. On information and belief, Samsung will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '455 Patent.

284.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Samsung Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims

1, 2, 3, and 8 of the '455 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

285.    Samsung's direct and indirect infringement of the '455 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

286.    On information and belief, Samsung acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Samsung should have known about it.  Samsung continues to infringe the '455 Patent by making, using, selling, offering for sale and/or importing in the United States the Samsung Smartwatch, Samsung Phone and Samsung tablet products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Samsung continues its infringement notwithstanding actual knowledge of the '455 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '455 Patent. Samsung's infringement of the '455 Patent, following its knowledge of the '455 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

287.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '455 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing measurement systems that embody the inventions claimed in the

'455 Patent, in particular, at least claims 1, 2, 3, and 8, within the United States and within this District. OnePlus has been and is engaged in one or more of these direct infringing activities related to its OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products. OnePlus sells the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The OnePlus Smartwatch products are designed to connect to and work in concert with the OnePlus Phone and OnePlus Tablet products through related mobile apps provided by OnePlus, which phones and tablets are operable to connect to a network to communicate with OnePlus's cloud-based servers. OnePlus has and continues to market and promote the compatibility between the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products for providing an integrated measurement system, and users need only perform simple steps to connect a OnePlus Smartwatch with a OnePlus Phone or a OnePlus Tablet enabled with a OnePlus health mobile app and supported by a OnePlus cloud. On information and belief, Plaintiff further alleges that OnePlus employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least claims 1, 2, 3, and 8 of the '455 Patent in connection with development, testing, and/or demonstration of measurement systems comprising OnePlus Smartwatch and OnePlus Phone or OnePlus Tablet products.

288.    Notice of the factual bases of Plaintiff's allegations of infringement of the '455 Patent by the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products is provided in the claim chart attached as Exhibit 24.  Exhibit 24 demonstrates how the '455 Patent is infringed by reference to particular OnePlus Smartwatches, OnePlus Phones, OnePlus Tablets, and the OnePlus cloud, which, on information and belief, are representative of the infringing aspects of at least the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products identified in

Paragraphs 130–132 above. The attached infringement chart is based on Plaintiff's current understanding of the OnePlus Smartwatch, OnePlus Phone, and OnePlus Tablet products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 24 is exemplary and should not be considered limiting of OnePlus's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

289.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '455 Patent, including at least claims 1, 2, 3, and 8, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

290.    OnePlus's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of a OnePlus Smartwatch integrated with a OnePlus Phone, a OnePlus Tablet and/or with another Android OS smartphone or tablet (including the Samsung Phone and Samsung Tablet products) running a compatible health mobile app provided and/or supported by OnePlus. Customers and end users have made and continue to make infringing measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 3, and 8, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 1, 2, 3, and 8 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the

claimed system. End-users initiate use of the system by placing a OnePlus Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

291.    OnePlus has actual notice of the '455 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of OnePlus obtaining actual knowledge of the '455 Patent prior to commencement of this lawsuit will be confirmed during discovery.

292.    OnePlus actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating OnePlus Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. OnePlus induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products, and providing instructions, documentation, and other information to customers and end-users suggesting they use such products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, OnePlus induces direct infringement by such third parties by (i) selling the OnePlus Smartwatch products to third parties and providing software designed to integrate such products with OnePlus Phone products, OnePlus Tablet products and/or other smartphones or tablets running a compatible health mobile app, when such

products are designed for use as a measurement system that infringes the '455 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '455 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of OnePlus Smartwatches are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by OnePlus; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products in their customary way; (vi) advertising and promoting the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products including the physiological measurement features thereof.

293.    Upon gaining knowledge of the '455 Patent, it became apparent to OnePlus that the manufacture, sale, importing, offer for sale, or use of the OnePlus Smartwatch products infringe the '455 Patent.  Despite knowledge of the '455 Patent, OnePlus continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '455 Patent. OnePlus performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '455 Patent. OnePlus directly benefits from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the OnePlus Smartwatch products. On information and belief, OnePlus will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would

induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '455 Patent.

294.    OnePlus, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing OnePlus Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 3, and 8 of the '455 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

295.    OnePlus's direct and indirect infringement of the '455 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless OnePlus ceases its infringing activities, it will continue to injure Plaintiff.

296.    On information and belief, OnePlus acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that OnePlus should have known about it. OnePlus continues to infringe the '455 Patent by making, using, selling, offering for sale and/or importing in the United States the OnePlus Smartwatch, OnePlus Phone and OnePlus Tablet products and by inducing and contributing to the direct infringing making and use of the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. OnePlus continues its infringement notwithstanding actual knowledge of the '455 Patent (including through service of this Complaint) and without a good

faith basis to believe that its activities do not infringe any valid claim of the '455 Patent. OnePlus's infringement of the '455 Patent, following its knowledge of the '455 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

297.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '455 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by at least making and using measurement systems that embody the inventions claimed in the '455 Patent, in particular, at least claims 1, 2, 3, and 8, within the United States. Fossil has been and is engaged in one or more of these direct infringing activities related to its Fossil Smartwatch products. Fossil sells the Fossil Smartwatch products through its retail stores and to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales. The Fossil Smartwatch products are designed to connect to and operate with an iOS or Android OS smartphone or tablet (including the Samsung Phone, Samsung Tablet, OnePlus Phone and OnePlus Tablet products) through related mobile apps provided and/or supported by Fossil, which phones and tablets are operable to connect to a network to communicate with a cloud computing platform. Fossil has and continues to market and promote the compatibility between the Fossil Smartwatch products and popular iOS or Android OS smartphones and tablets for providing an integrated measurement system, and users need only perform simple steps to connect a Fossil Smartwatch with a smartphone or tablet enabled with a Fossil health mobile app and supported by a cloud. On information and belief, Plaintiff alleges that Fossil employees, such as product development and testing engineers and/or sales and marketing personnel, have and continue directly infringe at least

claims 1, 2, 3, and 8 of the '455 Patent in connection with development, testing, and/or demonstration of measurement systems comprising Fossil Smartwatch products.

298.    Notice of the factual bases of Plaintiff's allegations of infringement of the '455 Patent by the Fossil Smartwatch products is provided in the claim chart attached as Exhibit 25. Exhibit 25 demonstrates how the '455 Patent is infringed by reference to particular Fossil Smartwatch products, popular Android OS smartphone and tablet products such as the Samsung Phone and Samsung Tablet products, and a Fossil-supported cloud, which, on information and belief, are representative of the infringing aspects of at least the Fossil Smartwatch products identified in Paragraphs 135–137 above. The attached infringement chart is based on Plaintiff's current understanding of the Fossil Smartwatch products based on information publicly available at the time of this filing. The selection of claims and products in Exhibit 25 is exemplary and should not be considered limiting of Fossil's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery. Publicly available information is cited throughout, but Plaintiff may rely on other forms of evidence to show infringement as this case progresses.

299.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '455 Patent, including at least claims 1, 2, 3, and 8, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others in this District and elsewhere in the United States.

300.    Fossil's customers and other end-users directly infringe at least by making and using infringing measurement systems comprised of Fossil Smartwatch products integrated as intended with an iOS or Android OS smartphone or tablet running a health mobile app provided and/or supported by Fossil. Customers and end users have made and continue to make infringing

measurement systems by combining and configuring the aforementioned components in accordance with the subject matter recited in claims 1, 2, 3, and 8, including, for example, by connecting and/or syncing the components and installing software applications on any one or more of the components, as necessary. End-users have used and continue to use the subject matter of asserted system claims 1, 2, 3, and 8 by placing the measurement systems into service and exercising control over the systems as a whole and obtaining beneficial use of each element of the claimed system. End-users initiate use of the system by placing a Fossil Smartwatch on their wrist and wirelessly pairing it to their smartphone or tablet and synching a health app on the smartphone or tablet with an associated cloud-based account. The end user benefits from each component of the claimed system, which allows the user to measure, monitor and track health information derived from non-invasive physiological measurements, to store and display related information on the user's smartphone or tablet, and to access backup storage and further processing capabilities of a cloud computing platform.

301.    Fossil has actual notice of the '455 Patent and the infringement alleged herein at least upon the service of this Complaint. The timing, circumstances, and extent of Fossil obtaining actual knowledge of the '455 Patent prior to commencement of this lawsuit will be confirmed during discovery.

302.    Fossil actively induces third parties, including customers and end-users, to make and use infringing measurement systems incorporating Fossil Smartwatch products operating in their normal and customary way and in accordance with their intended functionality and purpose. Fossil induces such acts of direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Fossil Smartwatch products, and providing instructions, documentation, and other information to customers and end-users

suggesting they use the Fossil Smartwatch products in an infringing manner, including by providing technical support, product manuals, online documentation, marketing, and advertisements.  For example, on information and belief, Fossil induces direct infringement by such third parties by (i) selling the Fossil Smartwatch products to third parties and providing software designed to integrate such products with smartphones or tablets running a health mobile app provided and/or supported by Fossil, when such products are designed for use as a measurement system that infringes the '455 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '455 Patent; (iii) dictating via their design and instructions to users thereof the manner in which the physiological measurement features of Fossil Smartwatch products are operated such that, when coupled as intended to a smartphone or tablet running a compatible health mobile app each element of the patented systems are present in a manner dictated by Fossil; (iv) providing a cloud computing platform designed to provide additional features to the users; (v) providing technical support, information, and instructions for assembling and operating the Fossil Smartwatch products in their customary way; (vi) advertising and promoting the Fossil Smartwatch products; and/or (vii) updating, enhancing, and providing ongoing support and maintenance for the Fossil Smartwatch products including the physiological measurement features thereof.

303.    Upon gaining knowledge of the '455 Patent, it became apparent to Fossil that the manufacture, sale, importing, offer for sale, or use of the Fossil Smartwatch products infringe the '455 Patent. Despite knowledge of the '455 Patent, Fossil continues to encourage, instruct, enable, and otherwise cause its customers and other third parties to make infringing systems and to use its products in a manner which infringes the '455 Patent. Fossil performs these acts with the intent, or willful blindness, that the induced acts directly infringe the '455 Patent. Fossil directly benefits

from and actively and knowingly encourages customers and end-users to make and use infringing measurement systems incorporating the Fossil Smartwatch products. On information and belief, Fossil will continue to engage in activities constituting inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '455 Patent.

304.    Fossil, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is contributing to the direct infringement by customers, resellers and/or end users of infringing physiological measurement systems pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing Fossil Smartwatch products and software designed and intended to integrate such devices with a smartphones and tablet computers networked to and supported by a cloud computing platform, knowing that such devices and software are material to the inventions claimed by at least claims 1, 2, 3, and 8 of the '455 Patent, are especially made or especially adapted for use in infringing the patented systems and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

305.    Fossil's direct and indirect infringement of the '455 Patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Fossil ceases its infringing activities, it will continue to injure Plaintiff.

306.    On information and belief, Fossil acted egregiously and with willful misconduct in that its actions constituted direct or indirect infringement of a valid patent, and this was either known or so obvious that Fossil should have known about it. Fossil continues to infringe the '455 Patent by making, using, selling, offering for sale and/or importing in the United States the Fossil Smartwatch products and by inducing and contributing to the direct infringing making and use of

the claimed inventions by others, in reckless disregard of Plaintiff's patent rights. Fossil continues its infringement notwithstanding actual knowledge of the '455 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '455 Patent. Fossil's infringement of the '455 Patent, following its knowledge of the '455 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

## JURY DEMANDED

307.    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in its favor and against Defendants as follows:

i.      finding that Defendants have directly and/or indirectly infringed or are directly and/or indirectly infringing one or more claims of each of the Asserted Patents;

ii.     awarding Plaintiff damages in accordance with 35 U.S.C. § 284, or as otherwise permitted by law, including treble damages based on Defendants' willful infringement, and damages for any continued post-verdict infringement;

iii.    awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

iv.     declaring this case exceptional and awarding Plaintiff its reasonable attorney fees in accordance with 35 U.S.C. § 285, or as otherwise permitted by law;

v.      a permanent injunction enjoining each Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in

concert or privity with any of them from infringing or inducing or contributing to the infringement of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.       awarding all such other costs and further relief the Court determines to be just and equitable.

Dated: December 20, 2024

*/s/ Daniel S. Stringfield w/ permission*
*William E. Davis, III*
William E. Davis III
Texas Bar No. 24047416
bdavis@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Daniel S. Stringfield (Admitted E.D. Tex.)
Illinois Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (Admitted E.D. Tex.)
Illinois Bar No. 6216483
tmaloney@nixonpeabody.com
Dragan Gjorgiev (Admitted E.D. Tex.)
Illinois Bar No. 6326950
Texas Bar No. 24136166
Peter Krusiewicz (Admitted E.D. Tex.)
Illinois Bar No. 6342444
**NIXON PEABODY LLP**
70 West Madison
Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax:  (312) 977-4405

Corey T. Leggett (*pro hac vice* forthcoming)
California Bar No. 342972
cleggett@nixonpeabody.com
**NIXON PEABODY LLP**
1 Embarcadero Center
32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
Fax:  (415) 984-8300

Elizabeth M. Chiaviello (Admitted E.D. Tex.)
Texas Bar No. 24088913*
echiaviello@nixonpeabody.com
**NIXON PEABODY LLP**
799 9th Street NW
Suite 500
Washington, D.C. 20001
Tel: (202) 585-8000
Fax:  (202) 585-8080

*Attorneys for Plaintiff Omni MedSci, Inc.*

\* Admitted to practice only in Texas; supervised by a member of the firm who is admitted to the D.C. Bar.